## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## MOBILE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **DONALD W. SOUTULLO,** | ) **CHAPTER 13** |
| | ) |
| **Debtor.** | ) **CASE NO.: 09-11543-MAM-13** |
| | ) |
| | ) |
| **DONALD W. SOUTULLO, and** | ) |
| **TAMMY SOUTULLO** | ) |
| | ) |
| **Plaintiffs,** | ) **ADVERSARY PROCEEDING NO.** |
| | ) |
| **v.** | ) **09-01137** |
| | ) |
| **CITIMORTGAGE, INC.,** | ) |
| | ) |
| **Defendant.** | ) |

## CITIMORTGAGE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**COMES NOW** defendant CitiMortgage, Inc. ("CitiMortgage"), by and through its undersigned counsel, and hereby submits this memorandum of law in support of its motion for summary judgment against plaintiffs Donald W. Soutullo ("D. Soutullo") and Tammy S. Soutullo ("T. Soutullo") (collectively referred to as "Plaintiffs" or "Soutullos"). In support of its motion, CitiMortgage states as follows:

# I. **STATEMENT OF THE CASE**[1]

The material facts of this case are not in dispute and this case is ripe for determination at the summary judgment stage. On December 11, 2009, Plaintiffs initiated this adversary proceeding by filing an adversary complaint against CitiMortgage asserting claims for: (1) wrongful foreclosure; (2) wantonness; (3) negligence; (4) breach of mortgage agreement; and (5) breach of fiduciary duty. However, after the parties have exchanged discovery and taken several depositions, the undisputed evidence demonstrates that each of Plaintiffs' claims fails as a matter of law.

The current dispute arises out of a loan obtained by Plaintiffs from ABN AMRO Mortgage Group, Inc. ("ABN AMRO") in 2002 in the amount of $54,400.00 ("Loan"). In exchange for receiving the Loan proceeds, Plaintiffs executed a promissory Note ("Note") in favor of ABN AMRO, as well as a Mortgage ("Mortgage") granting ABN AMRO a security interest in their property located at 11085 A Catherine Creek Drive, Mobile, Alabama, 36695 (the "Property") in Mobile County, Alabama. In connection with obtaining their Loan, Plaintiffs chose to pay their taxes and insurance outside of their Loan payments and waive the requirement that a borrower maintain an escrow account. As a result, Plaintiffs promised to maintain insurance on the Property and to send evidence of insurance and payment of taxes to ABN AMRO (or any assignee) at least fifteen (15) days before the expiration of any insurance policy.

Unfortunately, sometime during the origination process, an unknown individual at ABN AMRO appears to have mistakenly entered an incorrect tax parcel number for Plaintiffs' Property. The unknown individual actually entered the tax parcel number for Plaintiffs' nephew's property As a result, ABN AMRO mistakenly believed that Plaintiffs were not paying

---

[1] The undisputed facts are thoroughly presented in CitiMortgage's Motion for Summary Judgment filed contemporaneously herewith.

taxes on the Property and began making payments for taxes to Mobile County on Plaintiffs' nephew's property. Because it was making tax payments, ABN AMRO also began charging Plaintiffs for the amounts it was paying Mobile County for taxes. On several occasions, while ABN AMRO remained the owner and servicer of Plaintiffs' Loan, T. Soutullo and representatives of ABN AMRO discussed these tax issues and attempted, unsuccessfully, to resolve the tax confusion.

Also during this time, Plaintiffs had several lapses in their insurance coverage and failed to provide evidence of insurance to ABN AMRO. As a result, ABN AMRO had to obtain insurance for Plaintiffs on several occasions and created an escrow account to deal with Plaintiffs' insurance lapses.

In September 2007, CitiMortgage obtained the rights to Plaintiffs' Note and Mortgage. Immediately after obtaining Plaintiffs' Note, CitiMortgage began sending statements to Plaintiffs, which showed that Plaintiffs were delinquent on escrow charges, which included both tax and insurance payments. Because the tax problems were not resolved with ABN AMRO, CitiMortgage unknowingly continued to pay taxes on the Plaintiffs' nephew's property and was charging Plaintiffs for these payments. At the same time, Plaintiffs continued to suffer lapses in their property insurance coverage, also forcing CitiMortgage to obtain insurance and charge Plaintiffs for the price of the insurance.

Due to their failure to make escrow payments to ABN AMRO, Plaintiffs were in default of their Note and Mortgage obligations from the first month that CitiMortgage obtained Plaintiffs' Loan. Eventually, at the end of 2008, CitiMortgage retained Sirote & Permutt, P.C. to initiate foreclosure proceedings against Plaintiffs. In April 2009, Plaintiffs filed for bankruptcy and foreclosure proceedings were halted.

Each of Plaintiffs' claims must fail for several reasons. First, each of Plaintiffs' claims is predicated on the allegation that CitiMortgage wrongfully initiated foreclosure proceedings against Plaintiffs. However, the undisputed evidence shows that even if Plaintiffs were current on their tax payments, Plaintiffs failed to provide evidence to CitiMortgage that they paid their taxes and insurance as required by their Escrow Waiver Agreement. This constitutes a breach of the Note and Mortgage, and thus, CitiMortgage had the right to institute foreclosure proceedings. Plaintiffs also had permitted their insurance to lapse on several occasions and had failed to remit payment for these lapses. As a result, a large escrow balance had accrued and, as a result, Plaintiffs defaulted under the terms of their Note and Mortgage. Therefore, CitiMortgage was well within its right to initiate foreclosure proceedings.

Additionally, Plaintiffs' negligence and breach of fiduciary duty claims must fail because both claims are barred by Alabama's two-year statute of limitations. T. Soutullo admitted in her deposition, and CitiMortgage's account notes confirm, that T. Soutullo had conversations with ABN AMRO as early as 2004 regarding the tax issues surrounding the Loan. T. Soutullo continued to discuss these issues with ABN AMRO and CitiMortgage in 2006 and 2007. Most importantly, Plaintiff received statements in September, October, and November of 2007 from CitiMortgage, which showed that CitiMortgage was charging Plaintiffs for an accrued escrow shortage. Despite having knowledge of these issues as early as six years ago, Plaintiffs failed to initiate the current action until December 2009, three years after the statute of limitations had run on these claims.

Plaintiffs' claim for wrongful foreclosure must fail because CitiMortgage did not hold a foreclosure sale on Plaintiffs' property. Without exercising the power of sale, Alabama law dictates that CitiMortgage cannot be held liable for any claim of wrongful foreclosure.

Summary judgment is also appropriate for Plaintiffs' claim for breach of contract because the evidence clearly establishes that Plaintiffs breached their obligations under the loan agreements signed with ABN AMRO and assigned to CitiMortgage. Plaintiffs failed to maintain insurance on the Property and also failed to timely submit proper evidence of insurance and payment of taxes. As a result, Plaintiffs are precluded from bringing a claim for breach of the loan agreements.

Additionally, Plaintiffs' claim for wantonness must fail because Plaintiffs have not submitted any evidence to demonstrate that CitiMortgage, or a representative of CitiMortgage, had any intent to wrong Plaintiffs. The undisputed evidence shows that if Plaintiffs were wronged at all, which they were not, it was the result of a mistake made by ABN AMRO and Plaintiffs' failure to adequately investigate and attempt to remedy the mistake. CitiMortgage's actions cannot be described as wanton absent any additional evidence.

Plaintiffs' breach of fiduciary duty claim fails because CitiMortgage was merely Plaintiffs' mortgage lender and did not owe a fiduciary duty to Plaintiffs. Plaintiffs have not submitted any evidence to indicate that CitiMortgage should owe a heightened standard of care to Plaintiffs.

Finally, Plaintiffs' negligence claim must fail as a matter of law because Plaintiffs were contributorily negligent. Plaintiffs not only failed to submit evidence that they obtained insurance and paid property taxes, but also permitted their insurance coverage to lapse. This negligence resulted in CitiMortgage instituting foreclosure proceedings. Moreover, Plaintiffs received numerous statements from CitiMortgage showing that CitiMortgage was charging them for taxes that Plaintiffs did not owe, however, Plaintiffs never once called CitiMortgage to discuss the discrepancy until after foreclosure proceedings began. As a result, Plaintiff's

contributory negligence precludes them from recovery and their negligence claim fails as a matter of law.

For these reasons, and the reasons articulated below, CitiMortgage is entitled to summary judgment. There is no genuine issue of material fact present in this case and CitiMortgage is entitled to judgment as a matter of law.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Procedurally, the moving party bears the responsibility of informing the court of the basis for its motion and identifying those portions of the record that show lack of a genuine issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has carried its burden, the party opposing summary judgment "must do more than simply show there is some metaphysical doubt as to material facts" and must designate specific facts, beyond the pleadings, that show the existence of a genuine issue for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "[T]he mere existence of **some** alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no **genuine** issue of **material** fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). An issue of material fact is "genuine" only if it is supported by specific facts and has a real basis in the record. *Matsushita,* 475 U.S. at 586-87. Stated differently, facts are "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248. "Material" facts are those facts that might affect the outcome of the suit under governing law. *Id.* Summary judgment, therefore, will be

precluded only when the non-moving party can establish the existence of specific disputed facts that might affect the outcome of the case and result in a verdict for the non-moving party.

## III. ARGUMENT

### A. CitiMortgage Had a Right to Foreclose on Plaintiffs' Property.

First and foremost, each of the claims contained within Plaintiffs' complaint must fail as a matter of law because CitiMortgage properly exercised its rights to initiate foreclosure proceedings under the Mortgage executed by Plaintiffs. Each count contained within Plaintiffs' complaint is predicated on the allegation that CitiMortgage wrongfully instituted foreclosure proceedings against Plaintiffs. (*See* Doc. 1, Adversary Complaint, ¶¶ 18-32.) Plaintiffs assert claims for: (1) wrongful foreclosure; (2) wantonness; (3) negligence; (4) breach of mortgage agreement; and (5) breach of fiduciary duty. (*Id.*) However, at the center of each of these claims is the premise that "[t]he institution of foreclosure proceedings by Citi[Mortgage] was wrongful." (*Id.*, ¶ 19.) As thoroughly explained below, the uncontroverted evidence before this Court demonstrates that CitiMortgage had a right to initiate foreclosure proceedings and, as a result, each of the claims asserted by Plaintiffs must fail as a matter of law.

When Plaintiffs obtained their Loan from ABN AMRO in 2002, they made the decision to pay taxes and insurance outside of their Loan payments and to forego having an escrow account. (*See* Ex. A, Deposition of T. Soutullo, pp. 27-29; Ex. 4 to Ex. A, Escrow Waiver Agreement.)[2] In exchange for permitting Plaintiffs to sidestep the escrow account requirement, ABN AMRO required Plaintiffs to execute an Escrow Waiver Agreement. (*See* Ex. 4 to Ex. A.) The Waiver provided, in no uncertain terms, that Plaintiffs were to pay their own "taxes, assessments, leasehold payments or ground rents, **hazard insurance premiums**, flood insurance

---

[2] Each and every exhibit referenced in this memorandum of law is attached to CitiMortgage's Motion for Summary Judgment filed contemporaneously herewith.

premiums, and mortgage insurance premiums . . . ." (*Id.* (emphasis added).) The Waiver also demanded that Plaintiffs "furnish **satisfactory evidence** to [their lender] of timely payment in full" of their property taxes and insurance premiums. (*Id.* (emphasis added).) This "satisfactory evidence" included "cancelled check[s], paid tax receipt[s], or written confirmation of payment[s]." (*Id.*) Additionally, the Mortgage signed by Plaintiffs reiterated Plaintiffs' obligation to keep the property insured, stating that the "[b]orrower shall keep the improvements now existing or hereafter erected on the Property insured against loss . . . ." (Ex. A, pp. 24-25; Ex. 2 to Ex. A, Mortgage.) Finally, in connection with obtaining the Loan, Plaintiffs received an "Insurance Authorization" form, which stated that the Loan required Plaintiffs to maintain "proper fire, hazard, flood (if applicable) and or other property insurance" and that "a renewal policy **must be in our office at least 15 [fifteen] days prior to the expiration date of the previous policy**." (Ex. A, p. 34; Ex. 5 to Ex. A, Insurance Authorization Form (emphasis added).) The Insurance Authorization form also provided that in the event a renewal policy was not sent to the office in the required time, "**we will order a renewal policy** in like amount and for like coverages from the agent of our choice." (*Id.* (emphasis added).)

Plaintiffs testified that they understood that they were required to maintain insurance on their Property. (Ex. A, p. 25.) Despite this understanding, Plaintiffs permitted their insurance to lapse on numerous occasions. As early as January 2004, a little over one year after obtaining their Loan, Plaintiffs permitted the insurance to lapse on their Property, which forced ABN AMRO to obtain insurance. (Ex. A, p. 26; Ex. 6 to Ex. A, Letters Regarding Insurance Lapses to Plaintiffs; Ex. 5, Plaintiffs' Payment History, to Ex. C, Deposition of Bryan

Schrepel.) While Plaintiffs eventually obtained insurance on this occasion, Plaintiffs' failure to maintain insurance was a consistent trend. In fact, Plaintiffs required ABN AMRO and CitiMortgage to obtain insurance on their behalf on a number of occasions. Undisputed evidence submitted by CitiMortgage shows that ABN AMRO and CitiMortgage acquired and charged Plaintiffs for obtaining their insurance on the following occasions:

| Insurance Payments Made By ABN AMRO and CitiMortgage and Refunds Credited to Plaintiffs' Loan Balance | |
| --- | --- |
| Date | Payment / Refund Amount |
| 2/2/2004 | $19.58 |
| 11/24/2004 | $684.40 |
| 2/9/2005 | $362.60 |
| 2/17/2005 | -$645.02 |
| 4/21/2006 | $743.40 |
| 7/10/2006 | -$531.58 |
| 8/12/2008 | $634.00 |
| 2/20/2009 | -$181.11 |
| Total Insurance Delinquency: | $1,086.27 |

(Ex. C, pp. 158, 168, 171, 175; Ex. 5 to Ex. C.) As the chart demonstrates, when ABN AMRO or CitiMortgage was able to determine that Plaintiffs had obtained insurance coverage, Plaintiffs would be refunded the charged amounts, less the amount the lender paid during the lapse. However, despite these refunds, ABN AMRO and CitiMortgage still had to obtain insurance for Plaintiffs on several occasions.

Moreover, Plaintiffs have not submitted a single shred of evidence demonstrating that they ever complied with the terms of their Escrow Waiver Agreement and sent timely evidence of payment of taxes and insurance premiums to ABN AMRO or CitiMortgage. Not a single document evidencing that proof of insurance was sent to CitiMortgage or ABN AMRO has been

produced in this litigation. Therefore, even if Plaintiffs did maintain insurance on the Property at all times, which they did not, they still breached the clear terms of the Escrow Waiver Agreement by failing to provide adequate evidence of insurance and requiring ABN AMRO and CitiMortgage to expend untold resources determining their insurance status. (Ex. 4 to Ex. A.)

Plaintiffs' failure to maintain -- and provide evidence of -- insurance was in direct violation of the terms of the Escrow Waiver Agreement. As the Escrow Waiver Agreement stated, "[b]orrower's failure to fully comply in a timely manner with all the terms hereof **shall constitute a default** under this Agreement and the **Note and Security Instrument**." (Ex. 4 to Ex. A (emphasis added).) Plaintiffs testified that they understood that failing to comply with the terms of the Escrow Waiver Agreement could lead to a default under their Note and Mortgage. (Ex. A, pp. 29-30.)

As stated by the Mortgage executed by Plaintiffs, once a default occurred with respect to Plaintiffs' obligations, CitiMortgage could enforce its remedies under the Mortgage, including its power of sale. (Ex. 2 to Ex. A.) Plaintiffs received numerous statements after CitiMortgage obtained their Loan, each showing that Plaintiffs owed significant amounts in escrow shortage. (*See* Ex. 1, Statements to Plaintiffs from CitiMortgage, to Ex. D, Affidavit of Bryan Schrepel.) Of that escrow shortage, a significant amount was the result of Plaintiffs' insurance lapses. Therefore, Plaintiffs' have not shown -- and cannot show -- that CitiMortgage did not have a right to exercise its remedies under the Mortgage executed by Plaintiffs. As a result, each and every claim asserted by Plaintiffs must fail as a matter of law.

B.    **Plaintiffs' Claims for Negligence and Breach of Fiduciary Duty Are Barred by Alabama's Two-Year Statute of Limitations.**

Before addressing the substantive holes within Plaintiffs' theories of recovery, several of Plaintiffs' claims fail as a matter of law because they are barred by Alabama's general two-year

statute of limitations. Specifically, both Plaintiff's negligence claim and Plaintiff's claim for breach of a fiduciary duty are governed by Alabama's general two-year statute of limitations. The time to bring these two claims expired long before the filing of Plaintiff's adversary complaint.

Alabama's "catchall" statute of limitations is located at § 6-2-38(*l*) of the Alabama Code and provides that: "[a]ll actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years." ALA. CODE § 6-2-38(*l*) (1975). There is no question that § 6-2-38(*l*) applies to negligence claims. *See Singer Asset Finance Co., LLC v. Connecticut Gen. Life Ins. Co.*, 975 So. 2d 375, 382 (Ala. Ct. App. 2007) ("The statutory limitations period for filing a negligence action is two years.") (citing § 6-2-38(*l*)); *see also Boyce v. Cassese*, 941 So. 2d 932, 945 (Ala. 2006). The statute of limitations begins to run on negligence claims as soon as "the plaintiff can first maintain the action." *Booker v. United American Ins. Co.*, 700 So. 2d 1333, 1339 (Ala. 1997). A plaintiff is entitled to maintain an action when the plaintiff suffers damage and the statute begins to run at this initial point "regardless of whether the full amount of damage is apparent at the time of the first injury." *Id.* Moreover, the tolling provision of § 6-2-3 does not apply to claims for negligence. *Id.* at 1339-40; *see also* ALA. CODE § 6-2-3 (1975).

The same rules apply to claims for breach of a fiduciary duty. *See Casassa v. Liberty Life Ins. Co.*, 949 F. Supp. 825, 828 (M.D. Ala. 1996) ("Actions for fraudulent misrepresentation, fraudulent suppression, and breach of fiduciary duty are subject to a two-year statute of limitations . . . ."); *see also Davis v. Dorsey*, 495 F. Supp. 2d 1162, 1171 (M.D. Ala. 2007) ("There is a two-year statute of limitations on a cause of action for breach of fiduciary duty.") (citing Ala. Code § 6-2-38(*l*)); *Hensley v. Poole*, 910 So. 2d 96, 101 (Ala. 2005). As with

1845280 v1

negligence, the period begins to run when the plaintiff first suffers an injury. *See Davis*, 495 F. Supp. 2d at 1171.

Plaintiffs' complaint in the current action was filed on December 11, 2009, therefore, any claim for negligence or breach of a fiduciary duty that arose before **December 11, 2007** must be barred by § 6-2-38(*l*). In their depositions, Plaintiffs admitted that they received statements from CitiMortgage. T. Soutullo stated in her deposition:

> Q. Let's go back to these letters here. Is that your correct address on the letter?
> A. That's where the house is at.
> Q. Is that where you were getting mail?
> A. Yes.
> Q. Were you receiving statements each month from CitiMortgage?
> A. Yes.

(Ex. A, p. 48.) D. Soutullo stated:

> Q. Do you recall receiving monthly statements from CitiMortgage?
> A. I've seen some statements, yeah.
> Q. And your wife testified that she received those statements every month. Does that jive with your memory?
> A. Yes, sir.

***

> Q. Did you ever get statements and just not look at them?
> A. No, sir.
> Q. You always would look at them?
> A. Yes, sir.

(Ex. B, Deposition of D. Soutullo, pp. 28-29, 33.)

The statements received by Plaintiffs from CitiMortgage prior to December 11, 2007 clearly demonstrate that CitiMortgage was billing Plaintiffs for escrow charges, which included insurance and tax charges, and that Plaintiffs were behind on those obligations. (*See* Ex. D, ¶ 3-4; Ex. 1 to Ex. D.) After receiving the statements, Plaintiffs "reasonably should have

discovered" the alleged negligence or breach of a fiduciary duty by CitiMortgage. *See Casassa*, 949 F. Supp. at 828.

In addition to the clear evidence of the statements, T. Soutullo also stated that she discussed ABN AMRO paying her taxes as early as 2004:

> Q.    And you're saying you didn't receive any of those letters?
>
> A.    I can't remember getting any. I mean, I never talked with anyone. Let me see, I'm trying to think of something. I never remember getting any calls from our mortgage company except one time, it was in 2004, I believe, where they were telling me that they had paid my land taxes.
>
> I went and got my checkbook and I said, no, ma'am, you didn't pay my land taxes. She asked me if I could go get proof. I said, yes, ma'am. She gave me a lot number during this time. She was trying to say, I can't remember exactly what it was., but it was something.
>
> I went down and pulled up where we had paid our taxes and the lady pulled up where my mortgage company had paid my nephew's, or his nephew's land taxes because it seems like they had paid a hundred seventy some-odd dollars and our land taxes was more than that.
>
> I got her proof and I faxed it to them. That's the only time I can remember my mortgage company contacting me about insurance, land taxes or anything until CitiMortgage took over.

(Ex. A, p. 43.)

CitiMortgage's account notes also demonstrate that T. Soutullo called in about the tax issues to ABN AMRO in 2006. A representative of ABN AMRO had a conversation with T. Soutullo on May 23, 2006, during which Ms. Soutullo informed the representative that ABN had paid taxes on the wrong property. (Ex. C, pp. 76-77; Ex. 4 to Ex. D (000419).)[3] T. Soutullo had another conversation with ABN AMRO on June 2, 2006, during which they again discussed ABN AMRO's payment of taxes on the wrong parcel. (Ex. C, pp. 95-96; Ex. 4 to Ex. C (000415-000416).) Then yet again, on June 15, 2006, T. Soutullo had another conversation with

---

[3] Due to the large number of documents attached to Mr. Schrepel's deposition, six digit numbers referencing exhibits to his deposition are references to the Bates stamped numbers on those documents.

ABN AMRO regarding the tax issue. (Ex. C, pp. 98-99; Ex. 4 to Ex. C (000412).) The statements and account notes also appear consistent with T. Soutullo's deposition testimony, where she recalled discussing taxes and insurance with CitiMortgage in 2007.

> Q. If CitiMortgage's notes showed differently, that maybe you guys did have some conversations about the taxes and insurance other than what you're telling me would you dispute that?
> A. No. Like in '07 we talked about insurance and I explained to them that they had paid my nephew's land taxes. I tried to explain to them there had to be a problem there somewhere . . . .

(Ex. A, p. 50.)

Moreover, although Plaintiffs had knowledge of any alleged damage as early as their conversations in 2004, what is important is when Plaintiffs suffered their damage. *Booker*, 700 So. 2d at 1339. Plaintiffs first suffered a damage when ABN AMRO first charged Plaintiffs for taxes on the incorrect parcel. ABN AMRO's records indicate that it charged Plaintiffs for taxes on the incorrect parcel **at least** as early as **April 27, 2006**, and **at least** three times before December 11, 2007. (Ex. E, Discovery Responses of CitiMortgage; Ex. C, pp. 68-69; Ex. 5 to Ex. C.)

Despite receiving these statements and having these conversations with CitiMortgage, Plaintiffs failed to bring their lawsuit for more than two years, ignoring, and refusing to pay the amounts on the statements that were sent to the Property. Moreover, even if Plaintiffs did not read the statements sent by CitiMortgage, the Supreme Court of Alabama has stated that a borrower cannot "close one's eyes to the facts and circumstances reasonably apparent to the ordinary person . . . ." *Redman v. Federal Home Loan Mortg. Corp.*, 765 So. 2d 630, 634 (Ala. 1999). In other words, Plaintiffs had a responsibility to read the statements and attempt to resolve any issues that had arisen with their Loan. *See id.* Clearly Plaintiffs knew that, rightly or wrongly, ABN AMRO and CitiMortgage were paying taxes on their nephew's property, but

refused to act and instead chose the "head in the sand" route. (*See* Ex. A, p. 50.) Plaintiffs' failure to timely bring their lawsuit requires that this Court dismiss their stale claims. As such, Plaintiffs' claims for negligence and breach of a fiduciary duty are barred by § 6-2-38.

### C. Plaintiffs' Claims Fail Substantively.

While CitiMortgage was entitled to institute foreclosure proceedings and some of Plaintiffs' claims are barred by the statute of limitations, Plaintiffs' claims also fail substantively. As explained below, none of Plaintiffs' claims can survive summary judgment.

### 1. Plaintiffs' Claim for Wrongful Foreclosure Must Fail.

Plaintiffs' claim for wrongful foreclosure must fail as a matter of law. Plaintiffs cannot assert a claim for wrongful foreclosure where a foreclosure has not yet taken place. Under Alabama law, "[a] mortgagor has a wrongful foreclosure action whenever a mortgagee **uses the power of sale** given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. and Loan Ass'n*, 607 So. 2d 180, 182 (Ala. 1992) (emphasis added).

T. Soutullo admits in her deposition that CitiMortgage did not foreclose on their Property and that they still own the Property at issue. (Ex. A, p. 40.) This issue was addressed directly in *Hardy v. Jim Walter Homes, Inc.*, No. 06-0687-WS-B, 2007 WL 174391, at *6 (S.D. Ala. Jan. 18, 2007). In *Hardy,* the "Complaint alleged nothing more than that WMC **scheduled** a foreclosure sale of plaintiffs' property." *Id.* (emphasis added). The court then stated:

> **Plaintiffs have cited no Alabama authority, and the undersigned has found none, under which the mere scheduling of a foreclosure sale, without more, has been found to constitute a mortgagee's exercise of the power of sale.** A plain reading of that legal standard strongly suggests that it cannot, and that **the power of sale is exercised by selling, not merely by running a newspaper advertisement preparatory to selling.** As such, plaintiffs' Count Eight falls short of the *Reeves* threshold. Moreover, the clear weight of authority from other jurisdictions is that wrongful foreclosure actions are not recognized unless a foreclosure actually takes place. *See e.g., McKinley v. Lamar Bank*, 919 So. 2d

918, 930 (Miss. 2005) ("There was no wrongful foreclosure because there was never a foreclosure at all."); *Reese v. First Missouri Bank and Trust Co. of Creve Coeur*, 736 S.W.2d 371, 373 (Mo. 1987) (finding that only 3 of the 29 jurisdictions in the United States that allowed nonjudicial foreclosure through power of sale had recognized a cause of action for lender's attempted foreclosure that does not result in a sale). In the absence of any Alabama authority to the contrary, the Court finds the reasoning of *McKinley* and *Reese* persuasive.

*Id.* at *6 (emphasis added).

The undisputed evidence before this Court demonstrates that CitiMortgage did no more than retain Sirote & Permutt, P.C. to institute foreclosure proceedings and send several letters to Plaintiffs. Absent any demonstration that CitiMortgage actually foreclosed on Plaintiffs' Property, which it did not, Plaintiffs cannot assert a claim for wrongful foreclosure and the claim must fail as a matter of law.

> ### 2. Plaintiffs Cannot Prevail On a Claim for Breach of Mortgage Agreement.

Plaintiffs assert a claim for breach of contract, alleging that the actions of CitiMortgage in connection with the management of Plaintiffs' account and foreclosure activities constitute a breach of Plaintiffs' mortgage agreement. However, Plaintiffs cannot assert a claim for breach of contract because the evidence clearly indicates that, even if CitiMortgage could be found to have breached the parties' agreement, which it did not, Plaintiffs' own breach of the agreement precludes them from asserting a breach of contract claim.

The law in Alabama is clear that the Court should not enforce an agreement where the party seeking enforcement has failed to perform his part of the agreement. *Gray v. Reynolds*, 553 So. 2d 79, 82 (Ala. 1989) (citing *Smith v. Clark*, 341 So. 2d 720, 721 (Ala. 1977) ("Furthermore, this Court should not enforce an agreement where the party seeking to enforce the agreement has failed to perform his part of the bargain.")). "Thus, in Alabama, one who fails

to perform the requirements of a contract is not entitled to the benefits of said contract." *In re C & C Excavating, Inc.*, 288 B.R. 251, 257 (Bankr. N.D. Ala. 2002).

Plaintiffs' Mortgage, Escrow Waiver and Insurance Authorization all provided Plaintiffs with adequate warning as to what would happen should they fail to consistently maintain insurance on the Property and provide timely evidence of payment of property taxes and payment of insurance premiums. As was provided in the Escrow Waiver, "Borrower's failure to fully comply in a timely manner with all the terms hereof **shall constitute a default** under this Agreement and the Note and the Security Instrument." (*See* Ex. 4 to Ex. A (emphasis added).)

Plaintiffs have admitted that they permitted their homeowners insurance to lapse. (Ex. A, p. 26.) Moreover, the only evidence submitted regarding this issue clearly demonstrates that ABN AMRO and CitiMortgage were required to provide insurance for Plaintiffs on as many as four different occasions. (*See* Ex. 6 to Ex. A; Ex. C, pp. 85-86, 88.) Moreover, Plaintiffs have failed to submit any evidence that would demonstrate that they ever provided timely proof of payment of insurance premiums and taxes to ABN AMRO or CitiMortgage. This failure, in and of itself, constitutes a default under the terms of their Escrow Waiver Agreement, as well as under their Note and Mortgage. As Plaintiffs defaulted under the terms of the Mortgage and Escrow Waiver Agreement far before CitiMortgage instituted foreclosure proceedings, Plaintiffs are prohibited from bringing a claim for breach of the mortgage agreement. As such, Plaintiffs' claim must fail as a matter of law.

3. **Plaintiffs' Wantonness Claim Fails Absent Any Evidence of Intent On the Part of CitiMortgage.**

Plaintiffs have presented absolutely no evidence that CitiMortgage engaged in any intentional conduct to injure Plaintiffs and, therefore, do not have a viable wantonness claim that can survive summary judgment. The burden of proof for a wantonness claim in Alabama is high.

As was stated by the Alabama Supreme Court in *Ex parte Essary*, 992 So. 2d 5, 9-10 (Ala. 2007):

> Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. **Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury** . . . .

> \*\*\*

> Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as . . . **a conscious . . . act.** 'Simple negligence is the inadvertent omission of duty; and **wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted.**' *McNeil v. Munson S.S. Lines*, 63 So. 992, 995 (Ala. 1913).

*Id.* at 9-10 (emphasis added) (quoting *Tolbert v. Tolbert*, 903 So. 2d 103, 114-15 (Ala. 2004), quoting in turn *Ex parte Anderson*, 682 So. 2d 467, 470 (Ala. 1996), quoting in turn *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145-46 (Ala. 1987)) (emphasis omitted).

Plaintiffs have not provided a single shred of evidence that would show that CitiMortgage purposefully wronged Plaintiffs. Instead, at most, the evidence demonstrates that ABN AMRO made an error with respect to the identification of Plaintiff's tax parcel number and that CitiMortgage was unaware of any problem when it was assigned Plaintiffs' Loan. Since discovering the error, CitiMortgage has taken steps to credit Plaintiffs' escrow account in the amount of the taxes that it charged to Plaintiffs. (*See* Ex. 5 to Ex. C.) Without some evidence of a conscious act or omission on the part of CitiMortgage, Plaintiffs simply cannot assert a valid wantonness claim.

## 4.     Plaintiffs' Claim for a Breach of Fiduciary Duty Must Fail.

In addition to the claim being time-barred, Plaintiffs' claim for breach of a fiduciary duty must also fail substantively. Both federal and state courts in Alabama are clear that a mortgagee does not owe a fiduciary duty to a mortgagor. *See Brabham v. Am. Nat. Bank of Union Springs*, 689 So. 2d 82 (Ala. Ct. App. 1996) ("The gist of the [plaintiffs'] argument is that the supreme court has tacitly recognized that a mortgagee owes a fiduciary duty to a mortgagor. We do not agree."). The court in *Atkins v. GE Capital Morg. Srvs., Inc.*, 993 F. Supp. 1406 (M.D. Ala. 1998), wrote:

> The Parties present an accurate discussion of fiduciary law in Alabama in their pleadings on summary judgment . . . . **Generally the relationship of a lender to a borrower does not impose a fiduciary duty on the lender.** *K & C Development Corp. v. AmSouth Bank, N.A.*, 597 So. 2d 671 (Ala. 1992). **This general rule also applies to the relationship between a mortgagee and mortgagor.** *Brabham v. American Nat. Bank of Union Springs*, 689 So.2d 82 (Ala. Civ. App. 1996); *see also Nettles v. First Nat. Bank of Birmingham*, 388 So. 2d 916 (Ala. 1983) (holding no fiduciary duty existed between mortgagee and mortgagor despite mortgagee's active role in attempting to improve mortgage company's financial position).

*Id.* at 1418 (emphasis added).

Plaintiffs have presented no evidence to support a claim for breach of a fiduciary duty, other than to show that Plaintiffs and CitiMortgage are in a mortgagor / mortgagee relationship. No "special circumstances" exist that would permit a court to find such a duty within the parties' relationship. In fact, the evidence demonstrates that "special circumstances" do not exist, as Plaintiffs did not even take out their mortgage Loan with CitiMortgage initially. Instead, CitiMortgage was assigned the Loan from ABN AMRO and had no contact with Plaintiffs during the origination of Plaintiffs' Loan. The only communications that Plaintiffs' have had with CitiMortgage have been regarding where to send Loan payments and about the foreclosure proceedings. (Ex. A, pp. 44-46.) There is not a single allegation that CitiMortgage provided

Plaintiffs' with any counsel or advice. As such, Plaintiffs cannot assert a claim for breach of fiduciary duty against CitiMortgage.

### 5. Plaintiffs' Negligence Claim Also Fails.

In addition to being time-barred, Plaintiffs fail to assert a viable claim for negligence because they cannot demonstrate that any alleged negligence on the part of CitiMortgage caused their damages. Moreover, Plaintiffs' own contributory negligence bars their recovery.

In Alabama, "[t]he basic elements of any negligence action are: (1) an obligation owed by the defendant to the plaintiff, (2) a breach of the standard of care applicable to that obligation, (3) causation, and (4) damage." *Hilliard v. Huntsville Elec. Util. Bd.*, 599 So. 2d 1108, 1111 (Ala. 1992). Of particular importance in the current case is the issue of causation. Plaintiffs must demonstrate that there is a causal relationship between CitiMortgage's acts and their injury. *Bowden v. E. Ray Watson Co.*, 587 So. 2d 944, 946 (Ala. 1991). Plaintiffs have attempted to present evidence that they were forced to file bankruptcy because of CitiMortgage's alleged negligence. This damage would have resulted from CitiMortgage's act of initiating foreclosure proceedings against Plaintiffs. Plaintiffs, however, cannot demonstrate that filing bankruptcy resulted solely from any negligence on behalf of CitiMortgage.

Even assuming, *arguendo*, that CitiMortgage was negligent in charging Plaintiffs for taxes paid on an incorrect parcel of land, Plaintiffs still failed to consistently maintain insurance coverage or provide evidence of insurance as was required under their Mortgage, Escrow Waiver and Insurance Authorization. (*See* Ex. A, pp. 26, 39-40; Ex. 6 to Ex. A; Ex. C, pp. 85-86, 88, 158-59, 168, 171, 175; Ex. 5 to Ex. C.) This failure alone would have permitted CitiMortgage to foreclose on Plaintiffs' Property. Plaintiffs' action **was sufficient in and of itself** to produce the alleged injury.

Furthermore, "[t]he doctrine of contributory negligence provides that 'a plaintiff cannot recover in a negligence suit where **plaintiff's own negligence is shown to have proximately contributed to his damage**, notwithstanding a showing of negligence on the part of the defendant.'" *Phillips v. Seward*, --- So. 3d ----, 2010 WL 2546414, at *5 (Ala. June 25, 2010) (emphasis added) (quoting *Brown v. Piggly-Wiggly Stores*, 454 So. 2d 1370, 1372 (Ala. 1984)). "Contributory negligence is an **affirmative and complete defense** to a claim based on negligence." *Garrie v. Summit Treestands, LLC*, --- So. 3d ----, 2010 WL 1740421, at *6 (Ala. Ct. App. Apr. 30, 2010) (emphasis added) (citing *Serio v. Merrell, Inc.*, 941 So. 2d 960, 964 (Ala. 2006)). In order to prove establish contributory negligence, CitiMortgage must show that Plaintiffs: (1) had knowledge of a condition that could cause them damages; (2) had an appreciation surrounding circumstances; and (3) failed to exercise reasonable care. *See Knight v. Alabama Power Co.*, 580 So. 2d 876 (Ala. 1991).

As to the first prong of the contributory negligence analysis, Plaintiffs certainly had knowledge that failing to maintain and provide evidence of insurance could result in a default. T. Soutullo admitted such in her deposition. (Ex. A, pp. 29-30.) Moreover, Plaintiffs were put on notice that CitiMortgage charged them for tax payments on their nephew's property through receipt of numerous CitiMortgage statements. (Ex. A, pp. 48-51; Ex. 1 to Ex. D.) Plaintiffs also had an appreciation of the circumstances, as both ABN AMRO and CitiMortgage sent them numerous warnings regarding their failure to obtain and provide evidence of insurance. (*See* Ex. D, ¶¶ 3-6; Ex. 6 to Ex. A.) Plaintiffs also had knowledge that failure to pay taxes, and provide evidence of payment of taxes, could result in foreclosure. (*See* Ex. A, pp. 44-48; Ex. 4 to Ex. A.) Finally, Plaintiffs failed to exercise reasonable care and their negligence permitted CitiMortgage to institute foreclosure proceedings. As was shown in Part III.A, Plaintiffs failure to pay

maintain insurance and submit timely evidence of insurance to CitiMortgage "was sufficient in and of itself to produce the[ir] injury," which resulted from the institution of foreclosure proceedings.  Moreover, Plaintiffs failed to exercise reasonable care in calling CitiMortgage regarding the escrow overage that was shown on their statements and in their Escrow Account Disclosure Statements.  (*See* Ex. 12 to Ex. A.)  As a result, the doctrine of contributory negligence precludes Plaintiffs from any recovery against CitiMortgage.

Thus, Plaintiffs cannot complain about any alleged negligence on the part of CitiMortgage because their failure to maintain insurance and submit evidence of insurance was sufficient to produce their injury, as well as their failure to inquire as to the tax charges sent to Plaintiffs by CitiMortgage.  Therefore, CitiMortgage cannot be liable for negligence with regard to its handling of Plaintiffs' tax payments.  Plaintiffs' negligence claim fails as a matter of law for this reason.

## IV. CONCLUSION

Based on the foregoing, it is clear that there is no genuine issue of material fact and that CitiMortgage is entitled to judgment as a matter of law.

WHEREFORE, PREMISES CONSIDERED, CitiMortgage respectfully requests that this Court issue an Order granting CitiMortgage's Motion for Summary Judgment and dismissing Plaintiff's adversary complaint, with prejudice.

Dated this 12th day of July, 2010.

_/s/ Marc P. Solomon_
Marc P. Solomon
Reid S. Manley (MAN039)
Matthew T. Mitchell (MIT050)
Zachary D. Miller (MIL135)

Attorneys for Defendant
CITIMORTGAGE, INC.

**OF COUNSEL:**
BURR & FORMAN LLP
420 North 20th St.
Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 12th day of July, 2010:

Earl P. Underwood, Jr.
Law Offices of Earl P. Underwood, Jr.
21 South Section Street
Fairhope, Alabama 36532
Telephone: (251) 990-5558
Facsimile: (251) 990-0626
epunderwood@gmail.com

Kenneth J. Riemer
166 Government Street, Suite 100
Mobile, Alabama 36602
Telephone: (251) 432-9212
Facsimile: (251) 433-7172

*/s/ Marc P. Solomon*
OF COUNSEL